FILED

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2014 JUN 27 P 3: 08

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

JULIE GOBLE                                     )
   6614 Tenth Street, Apt. A           )
   Alexandria, Virginia 22307          )
                            )
        Plaintiff,                    )
                            )
        v.                            )    Civil Action No. ___1:14-CV-813___
                            )                       (TSE/TRJ)
City of Alexandria Police Department            )
   3600 Wheeler Avenue                 )
   Alexandria, Virginia 22304          )
                            )
        Defendant.                    )
                            )

## COMPLAINT
### (Employment Discrimination)

1.     Plaintiff Julie Goble brings this action pursuant to Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e *et. seq.*, to remedy acts of employment discrimination and

retaliation against her when the City of Alexandria Police Department took multiple adverse

actions against her because of her sex and her protected activity.

### Jurisdiction

2.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28

U.S.C. § 1331.

### Exhaustion of Administrative Remedies

3.     Plaintiff has exhausted her administrative remedies by virtue of the fact that she filed

Charge No. E-018-061113 with the Alexandria Office of Human Rights on June 11, 2013, which

was cross-filed with the Equal Employment Opportunity Commission (Charge No.

10A-2013-00042 on June 12, 2013, and a right to sue notice was issued on June 19, 2004, which

is less than 90 days before the filing of this complaint.

## Venue

4.     Venue is proper in the Eastern District of Virginia as Plaintiff was employed by

Defendant in this judicial district and the acts complained of occurred in this judicial district.

## Parties

5.     Plaintiff Julie Goble is female.  She is a citizen of the United States and of the

Commonwealth of Virginia.  Plaintiff was employed by the Alexandria City Police Department

from 2002 to the present.

6.     Defendant City of Alexandria is an official subdivision of the Commonwealth of Virginia

under the latter's constitution and statutes.  It has employed more than 500 persons in each of the

last 20 months.

## Statement of Facts

7.     Julie Goble was hired as a police officer with the City of Alexandria Police Department

in January 2002.

8.     From the very beginning the Police Department treated Ms. Goble differently from her

male colleagues.  During her training at the Police Academy, Ms. Goble was reprimanded for

"obscene" stretching.  She was touching her toes, which her male counterparts also did.

9.     In June 2002, Officer Goble graduated from the police academy and began her Field

Training Officer training period.  In October 2002, Goble was approved for solo patrol.  Her

acting supervisor was senior officer Ed Stephens.

10.    Under the pretense of observing her performance, Officer Stephens accompanied Officer

Goble on patrol. During patrol, Stephens demanded sexual favors and threatened to give her an unfavorable rating or recommend that she be terminated if she refused. Officer Stephens also called Officer Goble at home late at night. Goble recorded one phone call wherein Officer Stephens made lewd remarks and sexual demands. She also reported Officer Stephens's sexual harassment to her superiors and filed an EEO complaint with the EEOC. Eventually, the City terminated Officer Stephens's employment.

11.     After Officer Stephens was fired, Officer Goble was partnered with a series of officers in rapid succession, all of whom treated her with animosity and hostility based on her sex and because she had reported Officer Stephens.   Friends and sympathizers of Ed Stephens blamed Det. Goble for his termination.

12.     Several of Stephens's supporters later became supervisors and/or commanders within and/or over CIS, including Sergeants Jamie Bridgeman, Shahram Fard, Laura Barlow, Liz Magyar, Linda Erwin, and Gerald (Tony) Brown, Officer Monica Lisle and Deputy Chief Cleveland Spruill. All of these officers were or became supervisors and/or commanders within the direct chain of command over Det. Goble except for Sgt. Liz Magyar and Sgt. Linda Erwin. They were, however, CIS sergeants and aware of how Officer Goble's complaint of sexual harassment resulted in the firing of Ed Stephens.

13.     Sgt. Laura Barlow had been Officer Goble's first patrol sergeant as a rookie officer, under whom Ed Stephens was made an acting supervisor of Officer Goble due to an injury Sgt. Barlow had sustained. Sergeant Fard (then Officer Fard) was one of the officers with whom rookie Officer Goble was placed after she had reported Ed Stephens' sexual harassment. He later became a CIS sergeant over Det. Goble. Sergeant Jamie Bridgeman was originally a CIS sergeant

over Det. Goble and later returned to be a CIS lieutenant over her. Officer Monica Lisle was a

fellow police academy graduate with Ms. Goble and later became her CIS sergeant and then went

on to become a lieutenant over Internal Investigations. Lt. Lisle was involved in most if not all of

the Internal Inquiries (I.Q.'s) and/or Internal Investigations (I.I.'s) in which Ms. Goble was the

accused, due to Lt. Lisle being the commander of the unit over Sgt. Linda Erwin. Sergeant

Gerald (Tony) Brown was a CIS sergeant over Det. Goble. Deputy Chief Cleveland Spruill was

and still is the Deputy Chief over Investigations to include CIS.

14.     Despite achieving the top-rated score of Category 1 on the Detective Process evaluation

in 2009, Goble was initially passed over for a promotion to a Detective position in favor of other

candidates who scored lower, but who had not complained of sexual harassment.  It wasn't until

a police union representative was present during her interview that Officer Goble was finally

promoted to the position of Detective in late 2009.  She joined the Criminal Investigations

Section ("CIS"), and served in that position until her unlawful demotion in April 2013.

15.     As a detective, Det. Goble maintained a heavier case load than all of her colleagues and

consistently received high performance ratings.  Det. Goble solved many burglaries and felony

larcenies that were considered "unsolvable."  She had the highest success rate of closing cases of

any Detective in the Property Crimes Unit.  For example, in 2012, Detective Goble was assigned

50 cases, closed 25 of them, and made over 20 arrests.

16.     In December 2010, her then-Sergeant Edward Milner noted on her performance

evaluation that she closed 36 of her 81 assigned cases.  He rated her as "Outstanding," in eight of

nine categories, and as "Exceeds Requirements" in the final category.  In December 2011, her

then-Sergeant Gregg Ladisaw noted that she closed 19 of her 33 assigned cases.  He rated her as

"Outstanding" in two categories, "Exceeds Standards" in five categories, and "Meets Standards" in two categories.

17.   In January 2012, Sergeant Monica Lisle became Goble's supervisor. Almost immediately, Sgt. Lisle treated Det. Goble differently from her male colleagues and those who had never complained of sexual harassment. Lisle conducted an audit of Det. Goble's cases from January 2011 to March 2012. Lisle did not audit anyone else's cases. Sgt. Lisle reprimanded Goble for her allegedly late paperwork. However, Det. Goble's supposed deficiencies in her paperwork were no worse than that of numerous of Det. Goble's male counterparts, all of whom had smaller case loads than Det. Goble. Det. Goble met Lisle's deadline for updating her paperwork.

18.   In May 2012, Sgt. Michael Kochis replaced Sgt. Lisle as Det. Goble's direct supervisor and Lieutenant Jamie Bridgeman (male), who was Sgt. Kochis's supervisor became Goble's second-level supervisor.

19.   After Ms. Goble complained about being singled out, chastised, and targeted for discipline for the status of her cases and supplements, Sergeant Kochis conducted an audit of all the detectives cases in the CIS. Sgt. Kochis's audit revealed that all but one of his detectives were late on supplements to their cases. The precise results of the audit have been withheld from Officer Goble despite repeated requests for the information.

20.   Lt. Bridgeman treated Det. Goble less favorably than his male detectives. For example, he directed Det. Goble not to interview a subject because she is female. Lt. Bridgeman sent two male detectives to interview the subject. Lt. Bridgeman stated, "the suspect is male, so we're sending males to interview him."

21.     Det. Goble had done a great deal of investigative work in order to obtain a search warrant for the suspect's residence and an arrest warrant for the suspect. The practice in the office was that each detective interviewed the suspects in their own cases without regard to sex, age, or race. Moreover, Det. Goble had an excellent track record in obtaining confessions from both male and female suspects.

22.     Lt. Bridgeman laughed at Det. Goble when she repeated her request to interview the male suspect. Instead, he sent the two male detectives to the interview based on their sex.

23.     The male detectives did not obtain a confession from the suspect. However, due to the evidence Det. Goble had collected against the suspect, the case was successfully prosecuted.

24.     When Sergeant Kochis became Det. Goble's supervisor he reviewed the squad files and noticed that Sgt. Lisle had applied extra scrutiny to Det. Goble's file, versus other detectives' files and brought this disparate treatment to Det. Goble's attention. Sgt. Kochis was concerned that she was being targeted by both Sergeant Lisle and Lieutenant Bridgeman for extra scrutiny and for administrative and/or other forms of punishment. He was also concerned that Lt. Bridgeman had begun scrutinizing Det. Goble's case files and had directed him to apply extra scrutiny to her. Sgt. Kochis encouraged Det. Goble to report the fact that she was being treated more harshly than other CIS Detectives to the City of Alexandria Human Resources Office and to the City of Alexandria Human Rights Office.

25.     On October 15, 2012, Det. Goble met with City of Alexandria Human Rights Investigator David Miller and City of Alexandria Human Resources Representative Steve Mason regarding the fact that Lt. Bridgeman was subjecting her to closer scrutiny than her male colleagues. Det. Goble also complained that Lt. Bridgeman had not allowed her to interview male suspects

because of her sex.

26.     On October 15, 2012, Goble reported back to Sgt. Kochis that she had informed both offices of the disparate treatment of her by commanders in CIS.  Shortly thereafter, Kochis's superiors conveyed disappointment about Goble's complaint to Kochis.

27.     Less than two months after advising him of her complaints of discrimination, Sgt. Kochis' chain of command ordered him to rate Detective Goble "Unsatisfactory."  He did so despite the fact that in or around November 2012, in the presence of Lt. Bridgeman, Sgt. Kochis had told Det. Goble that, on her upcoming annual performance evaluation, she would be rated no less than "Meets Requirements" in each rating category.

28.     Sgt. Kochis has sworn that he was ordered to rate Detective Goble as "Unsatisfactory" and that he "expressed my concern to Capt. Ogden and Lt. Bridgeman that by not giving Detective Goble a plan to succeed prior to her evaluation which was coming up soon would be problematic; I was told again to not place Detective Goble on a performance improvement plan and to let the Internal Query take its course."  He was told to rate her Unsatisfactory despite his objections.

29.     Detective Goble was rated "Unsatisfactory" on December 4, 2012, despite being up to date on all of her paperwork except four supplements and having closed 24 of her 49 assigned cases.  Goble was rated "Unsatisfactory" in three categories: Reliability, Responsibility and Meeting the Changing Demands of the Workplace.  In contrast, a male detective who was late on his supplements was rated "Meets Expectations" for Reliability and his ratings for Responsibility and Meeting the Changing Demands of the Workplace were not affected by his late supplements. Nor was his "Quality of Work" rating affected by an email complaint from the Commonwealth

Attorney's office regarding his failure to respond to multiple requests for interview recordings and statements.

30.     Goble's rating violated the City of Alexandria's Police Directive 4.14.03(b) ("Whenever possible, the rater should make the subordinate aware of any serious deficiencies (those that could result in a rating of BELOW STANDARDS or UNSATISFACTORY) at least 90 days prior to the end of the rating period." and requiring a PIP).

31.     Instead of providing an 90 day notice and improvement period, the Department used the next 90 days to rate Det. Goble even lower. Sgt. Brown lowered Det. Goble's ratings even further and cited numerous false examples of supposed performance deficiencies which were not in the December 2012 evaluation, some of which were not within the time period covered by the December 2012 rating period and dated as far back as 2010.

32.     After the 90-day period, which the City alleges was an opportunity for Detective Goble to improve, her Sgt. Brown rated her "Unsatisfactory" on March 19, 2013. Because of this rating, Det. Goble did not receive a merit increase.

33.     Once again, her rating official, this time Sgt. Brown, was ordered to give this rating by his chain of command. She was given this rating despite the fact that she had an extraordinarily heavy caseload and demonstrated a significant improvement in the timeliness of her paperwork.

34.     Goble had been late on submitting just four of her supplements during the 90-day period—one was seven days late and the other three were ten days late. This is a much better record for timeliness than most of her colleagues. For example, Det. Ground, who has recently been promoted to Sergeant, had submitted his supplements up to 90 days late. Similarly, Detective Brad Cecchetti was treated more favorably when his rating was unaffected by his multiple late

supplements and the Sergeant's receipt of an email complaint from the Commonwealth Attorney's office regarding his failure to respond to multiple requests for interview recordings and statements.  Nor was there an internal investigation into Cecchetti's failure to respond.

35.    Also on the heels of Det. Goble's complaint of sex discrimination to the Office of Human Rights, Lt. Bridgeman subjected her to a barrage of Internal Queries and Internal Investigations. These types of inquiries are intended to investigate alleged misconduct by an employee; Det. Goble had committed no misconduct.

36.    In addition to issuing Ms. Goble this discriminatory and retaliatory rating, the City treated Det. Goble more harshly for her late paperwork than her male coworkers.  Based on several false allegations, Det. Goble was demoted from Detective to Patrol Officer, which significantly reduced her overtime requirements and thus her income.  The City of Alexandria Police Department violated Title VII of the Civil Rights Act when it took these actions and when it subjected Goble to a hostile work environment based on her sex and in retaliation for her complaints of sex discrimination.

37.    As a result of the above-described acts of unlawful discrimination and retaliation, Officer Goble has suffered and continues to suffer pain and mental anguish, curtailment of career opportunities, personal and professional humiliation, and emotional distress.

### Prayer for Relief

WHEREFORE, plaintiff prays that this Court enter judgment in her favor and against defendant on all claims brought herein and provide her with the following relief:

a.    award plaintiff $300,000.00 compensatory damages against defendant, plus interest thereon;

b.    reinstate plaintiff to the position of Detective retroactive to the date of her

demotion, with backpay and interest thereon;

c.    remove the negative ratings and comments in plaintiff's personnel file and replace

them with positive ratings and comments;

d.    enjoin defendant from discriminating or retaliating against plaintiff in the future;

e.    award plaintiff the costs of bringing and maintaining this civil action and the

investigation that preceded it, including reasonable attorneys' fees and costs; and

f.    award plaintiff such other and further relief as the interests of justice may require.


## Jury Demand

Plaintiff hereby requests a jury trial on all issues of fact and damages.


Respectfully submitted,

Ellen K. Renaud
V.A. Bar # 47326
SWICK & SHAPIRO, P.C.
1101 15th Street, NW, Suite 205
Washington, D.C.  20005
Tel. (202) 842-0300
Fax (202) 842-1418
E-mail: EKRenaud@swickandshapiro.com

Attorney for Plaintiff